JOHN E. JONES *et al.*, plaintiffs in error, *vs.* MACON AND BRUNSWICK RAILROAD CO., *et al.*, defendants in error.

1. An injunction which is a harsh remedy should not be granted until a clear *prima facie* case is made by the bill. The allegations must be direct and positive. A charge that they are true "on information received from others," is insufficient.

2. It is not necessary to the adjudication of this case, for this Court to decide whether the 5th section of the Act granting the aid of the State to the Air-line Railroad Company, when applied to any other Company, is constitutional or not.

3. Said section, if constitutional, does not confer upon any citizen or tax payer of this State any right to institute any suit, or to file any bill in any court of this State, to inquire into the conduct of the Legislature in the passage of any Act or resolution on the subject of State aid, or into the conduct of the Executive in issuing the bonds of the State, as both are responsible to the people alone, and not to the Courts; or to inquire whether the company has complied with the terms of the Act granting State aid or whether the necessary subscriptions have been made or to intermeddle in any way in the affairs of the Company, farther than is necessary to the investigation of the single question, whether the Company has sold the bonds endorsed by the State for less than ninety cents in the dollar; and in case of such a bill filed by a citizen or tax payer, the Court should confine the investigation to that issue alone.

4. It was the duty of the Chancellor under the resolution passed by the Legislature on the 28th day of January, 1869, to dissolve the injunction in this case.

Constitutional laws. Injunction. Decided by Judge COLE. Chambers. Bibb county, March 1869.

William B. Hodgson, John L. Mustain, and John E. Jones, by their bill made this case: They charged that the Macon and Brunswick Railroad Company was an incorporation of this State, having its principal office in said county, that they, complainants, are citizens of the State of Georgia, and tax payers thereof; that the Legislature of said State passed "An Act entitled an Act to extend the aid of the State to the completion of the Macon and Brunswick Railroad, and for other purposes," approved 3d day of December, 1866, of which the following is a copy:

Jones *et al.*, *vs.* Macon and Brunswick R. R. Company.

"*Whereas*, the Macon and Brunswick Railroad has been completed to the distance of fifty miles from the city of Macon, and is thoroughly equipped, and daily trains are running thereon, and seventy miles additional are graded and ready for the superstructure; *and, whereas*, its completion to Brunswick would greatly inure to the benefit of the State in developing its agricultural, commercial and manufacturing interests; *and, whereas*, by reason of the financial embarrassments resulting from the late war, the stockholders of said railroad are unable to supply the capital necessary to the completion of this great work:

SECTION I. *Be it enacted, etc.*, That his Excellency, the Governor be, and he is hereby authorized to place the endorsement of the State of Georgia on the bonds of the Macon and Brunswick Railroad Company, which said Company may issue to the amount of ten thousand dollars per mile for as many miles of said road as are now completed, and the like amount per mile for every additional ten miles, as the same may be completed and placed in running order, on the following terms and conditions, to-wit: Before any such endorsement shall be made, the Governor shall be satisfied that as much of the road as the said endorsement shall be applied for, is really finished and in complete running order, and that the said road is free from all liens and mortgages, or other incumbrances which may, in any manner, endanger the security of the State; and, upon the further condition and express understanding that any endorsement of said bonds when thus made, shall not only vest the title to all property of every kind which may be purchased with said bonds in this State until all the bonds so endorsed shall be paid, but the said endorsement shall be and is hereby understood to operate as a prior lien or mortgage on all the property of the company, to be enforced as hereinafter provided for.

SEC. II. In the event of any bond or bonds endorsed by the State, as provided in the first section of this act, or the interest due thereon, shall not be paid by said Railroad Company at maturity, or when due, it shall be the duty of the Governor, upon information of such default by any holder of

said bond or bonds, to seize and take possession of all the property of said railroad company, and apply the earnings of said road to the extinguishment of said bond or bonds or coupons, and sell the said road and its equipments and other property belonging to said Company, in such manner, and at such time, as in his judgment may best subserve the interest of all concerned."

SEC. III. Repeals conflicting laws.

And the Legislature afterwards and before the endorsement by the Governor of any of the said bonds of the Macon and Brunswick Railroad, for the purpose of still further restricting the endorsement of the said bonds, and the use thereof by the said railroad company, and the security of the State on account thereof, passed a resolution, which was approved on the 4th December, 1866, of which the following is a copy:

"*Whereas*, A bill has been passed at this session of the General Assembly, entitled 'An act to extend the aid of the State to the completion of the Macon and Brunswick Railroad, and for other purposes;' *and whereas*, the said bill authorizes his Excellency, the Governor, to place the endorsement of the State on the bonds of said company; *and whereas*, no limitations were fixed upon the terms of sale of said bonds; therefore,

"*Be it resolved*, That said company shall not sell or dispose of the bonds thus endorsed by his Excellency for more than ten per cent. discount, and the endorsement of the State upon the bonds of the said company shall not exceed one million of dollars, until an amount of capital equal to the additional endorsement shall be *bona fide* subscribed and paid into said company.

"2d. *Be it further resolved*, That in order more fully to secure the payment of the bonds of said railroad company, it shall be the duty of said company to set apart annually two per cent. of the amount endorsed for, as a sinking fund, which shall be invested in State bonds and deposited with the Governor, to be held in trust for said company, and

which shall be applied exclusively to the payment of the bonds of said company.

"3d. *Be it further resolved*, That his Excellency, the Governor, be authorized to withhold his endorsement upon the bonds of said company until the President and Directors of said company give him written acceptance of the terms of these resolutions, and that these resolutions are received as explanatory of the bill extending the aid of the State to said Macon and Brunswick Railroad Company, and equally binding with said Act."

The credit of the State thus given to the Macon and Brunswick Railroad Company was extended upon the faith of the facts stated in the preamble to the Act, that the road was fully finished to the distance of fifty miles from the city of Macon, fully equipped and in complete running order for and with daily trains, and for the sole purpose of enabling said company to continue, extend and complete said road, from the point at which it was then finished and in good running order, by the purchase, with the aid thus extended to said company, of new iron, machinery, material and labor for that purpose.

Afterwards, to-wit, on the ......... day of ..............., in the year eighteen hundred and sixty —, the then Governor of the State of Georgia, in execution of the powers conferred on him by the foregoing Act of the Legislature, endorsed and delivered to said company five hundred thousand dollars, upon the terms, conditions and limitations imposed by the aforesaid Act and Resolutions of the Legislature, and for the purposes and uses therein specified, and for no other purpose, and so the same were taken and accepted by the said Macon and Brunswick Railroad Company.

Said company, after receiving said bonds, so endorsed by the State for the purposes aforesaid, being unable, after the most diligent efforts, to negotiate said bonds within the limits imposed by the Resolutions of the Legislature as aforesaid for *cash*, or material at *cash prices*, to continue the work on said railroad towards its completion, according to the letter,

as well as the plain intent and meaning of said Act and Resolutions—fraudulently, and in violation of the terms and conditions upon which the State gave the endorsement—borrowed money, and hypothecated some of said bonds for securing the payment thereof, receiving much less than ninety cents in *cash* on the dollar of the amount of bonds thus hypothecated. The said company, also in violation of the intent of the said Act and Resolutions, transferred a large portion of said bonds in payment of debts contracted and incurred by said company and for the building and equipping and running of said road from the city of Macon to the point fifty miles distant therefrom, to which it was represented to be finished and in complete running order; that the whole of the first bonds so endorsed by the State, to the amount of five hundred thousand dollars, was disposed of by the said company, by borrowing money upon them, at a greater discount than ten cents on the dollar, as above stated, in paying off its debts and other like purposes, contrary to the true intent of the said Act and Resolutions, and in express violation thereof. None of the said bonds, or money received therefrom by hypothecation or otherwise, was applied by said company to the continuation, extension and completion of the balance of the line of said railroad, or in the purchase of iron, machinery, material, or payment of additional labor, as contemplated by the Legislature in granting said aid, so as to secure the State from the payment of said bonds, or any part thereof.

Although ......... years have elapsed since the issuing and endorsement of said bonds, the said railroad company has failed to set apart two per cent. annually on said sum so endorsed, and deposit the same with the Governor of the State, to provide a sinking fund for the payment of said bonds, as provided for by the Resolutions aforesaid, and in utter violation thereof, and of the terms and conditions on which said endorsements were made; nor did the said railroad in the disposition of any of said bonds, so endorsed by the State as aforesaid, whether by hypothecation, in payment of the old debts of said company, or otherwise, realize as much as

Jones *et al.*, *vs.* Macon and Brunswick R. R. Company.

ninety cents on the dollar, or on any part thereof, but a much less sum. The same were hawked about the various markets by the said railroad company and the holders thereof, after such transfer, at a much less sum, and at prices ranging from sixty to eighty-five cents on the dollar, and in no instance was as much as ninety cents on the dollar in cash or its equivalent realized; all of which was in violation of the terms and conditions on which said aid was given, and on which the bonds so endorsed were received by the said company, and to the injury of the State of Georgia and of all the citizens and tax payers thereof.

To further protect and secure the State and the citizens and tax payers thereof, against loss or injury on account of the endorsement of these bonds, and others of like character, and issued for like purposes, and to confine this railroad company, and all other companies of the State for like purposes, to the use of its bonds by such railroads exclusively to the objects for which the aid was given, and upon the terms and conditions imposed, the Legislature passed another Act, entitled "An Act to loan the credit of the State of Georgia to the Georgia Air Line Railroad Company, and for other purposes," approved 21st September, 1868, by the 5th section of which it was enacted, "That no railroad company in this State shall, under any pretext, sell or dispose of any bonds issued to it by the State, or any of its own bonds endorsed by the State, at less than ninety cents in lawful money of the United States. And in case any such company to which the State has, or may extend aid, by any direct con-. tract, or by any evasion or pretext, sell or dispose of, or attempt to sell or dispose of, any bonds issued or endorsed by the State as aforesaid, for less than ninety cents on the dollar, it shall be the duty of his Excellency, the Governor, to withhold all further issue of bonds to such company, and all further endorsement of the bonds of such company. And any citizen or tax payer in this State may appeal to the Courts in his own name, to restrain such illegal use of the bonds so issued or endorsed to said company, and to discover the fraudulent or illegal use made of such bonds by reason of

which the credit of the State may be depreciated, and the burdens of citizens increased. And said endorsements shall in no case exceed the amount per mile already invested by stockholders or private persons and actually paid in by such stockholders, nor shall said endorsement exceed one million five hundred thousand dollars in any event."

After this enactment, and with a full knowledge of the terms and conditions imposed thereby and therein, and with-out any further or additional subscription to the capital stock of said Macon and Brunswick Railroad Company to that previously subscribed, paid in and invested in the building of said road and its equipment, and which the bonds of the company, previously issued, endorsed by the State, negotiated as hereinbefore set forth and stated, fully represented and covered, the said railroad company entered into an agreement with George D. Morgan, of the city of Boston and State of Massachusetts; and Dabney, Morgan & Co., M. R. Jessup & Co., S. L. M. Barlow, Morris Ketchum, D. Willis James, James R. Jessup, Foster & Thompson, J. S. Morgan & Co., James Godwin, L. P. Mintum & Co., J. Milbank, W. R. Garrison, W. H. Hays and William H. Gray, all residents of the State of New York and city of New York, in which it was stipulated by said persons and firm that they would finish said railroad, equip and put it in complete running order, according to the original design of the charter thereof; and, in consideration therefor, the company agreed to issue its bonds, and cause the same to be endorsed by the State of Georgia, under the power conferred by the aforesaid Acts and Resolutions of the Legislature of said State, at the rate of $10,000 00 per mile, as each ten miles of said road should be finished by said company, and to be delivered to said persons as part payment for their said work, so agreed to be done by them, at the nominal rate of ninety cents on the dollar, and so on, until the whole work was finished; and then the said railroad company was to transfer to said persons, as a further and additional payment for said work so agreed to be done by said persons, $1,500,000 00 of the stock of said company, which said railroad company then

and there guaranteed and contracted should pay eight per cent. dividends annually, and to be preferred to all other stock in said company, and, also, $1,000,000 00 of the unendorsed bonds of said company. And under said agreement, said Dabney, Morgan & Co., *et al.*, have gone on and sublet contracts for the grading, superstructure, and other work on said road, to George G. Hull, of Chatham county, and Denmead, of the county of Cobb, Sears & Holeman, of the county of Spalding, and others; and the said parties so contracting with the Macon and Brunswick Railroad Company, by themselves, their agents and sub-contractors, on the faith of, and under said agreement, have gone to work on said road ; and ten additional miles having been completed, the said railroad company issued its bonds for the sum of $100,000 00, and obtained the endorsement of the State of Georgia, by his Excellency Governor Bullock. Subsequently, and on the ...... day of......, in the year eighteen hundred and sixty-......, said railroad company delivered the whole of the bonds so endorsed, as aforesaid, to the said Dabney, Morgan & Co., and others, in part payment for their work on said road, as aforesaid, done and to be done.

Said agreement, and said transfer of said bonds as last aforesaid, is illegal, contrary to the letter, the plain intent and meaning of the aforesaid Acts and Resolutions of the Legislature of the State of Georgia, and in fraud of the same, and the restrictions, terms and conditions upon which said aid was given, and the issuing, negotiation and use of the said bonds of said company so endorsed or to be endorsed by the State of Georgia for that, although the said persons so contracting with said railroad as aforesaid, and to whom said bonds were transferred, and to be transferred as they should issue, took the same at the nominal sum of ninety cents on the dollar ; yet, under the agreement of the railroad company to transfer to said persons, in addition, the sum of $1,500,000 00 in the guaranteed eight per cent. preferred stock, without regard to the actual cost of the building, completion and equipment of said road, which complainants, on information received from others, charge to be the fact.

The said railroad company did not receive, nor were to receive, as much as ninety cents on the dollar of said bonds so transferred and agreed to be transferred, nor anything equivalent thereto, but a much less sum ; the whole scheme was a pretext to avoid or evade the plain requirements of the Acts and Resolutions of the Legislature of the State of Georgia, as aforesaid. Said transfer and agreement to transfer said bonds, last aforesaid, was and is illegal, contrary to the letter and plain intent and meaning of the aforesaid Acts and Resolutions of the Legislature of the State of Georgia, and the restrictions, terms and conditions therein and thereby imposed upon the endorsement, negotiation and use of said bonds, and in fraud of the same, because the said company did not, in fact, receive as much as ninety cents on the dollar for the bonds actually transferred as aforesaid, in lawful money of the United States, nor agree to receive as much as ninety cents on the dollar on the bonds agreed to be transferred, because the issue of the same and transfer thereof was not based upon an addititional *bona fide* subscription of stock invested by stockholders, and actually paid in, as required by the 5th section of the Act of the Legislature of Septembre 21st, 1868, and because it was the intention of the Legislature, as expressed in said Acts and Resolutions, that the loan of the credit of the State should be in aid of the stockholders of said company, of investments therein by stockholders in good faith actually paid in, and on faith of such investments actually made ; whereas, these bonds are transferred under their agreement without any such investment, and without the security intended and expected and required by the State, in its agreement to extend this aid. By reason of all which illegal and fraudulent use of the said bonds so endorsed, the credit of the State has been, and will be, greatly depreciated. Said contract between the said railroad company, and the said Dabney, Morgan & Co., and others, is illegal and fraudulent, because, under said contract, said railroad company agree to give, for the grading, superstructure and completion of said road, and pay for the same in said endorsed bonds of the State, and said bonds not endorsed,

and eight per cent. guaranteed stock of said company, a much larger sum, to-wit: fifty per cent. or other large sum, more than the same could be procured to be done for in cash, or bonds endorsed by the State at ninety cents on the dollar.

Propounding sifting questions as to all the minitiæ of the business of said railroad company, complainants prayed for *subpœna* against all of said defendants, and for writ of injunction, directed to the Macon and Brunswick Railroad, its President and Directors, and to each and every of them, commanding and requiring them to withhold from disposing of any of said bonds endorsed by the State of Georgia, either of the $500,000 00 dollar issue, or of the $100,000 00 issue, which may be in the hands of, or under the control of, the the said railroad company, and still undisposed of or not transferred, from issuing any more of its bonds, either endorsed, or for the purpose of procuring the endorsement of the State of Georgia thereon, and from delivering the same to the said Dabney, Morgan & Co., and others, contractors on said railroad, or to any other person or persons, until the further order or decree of the Court in the premises; that the said railroad company and the said Dabney, Morgan & Co., George D. Morgan and others, be enjoined from further proceeding with said fraudulent and illegal contract as heretofore set forth and charged, until the further order of the Court in the premises; that the said George G. Hull, as the agent of said Dabney, Morgan & Co., and others, be also enjoined in like manner from doing any act from this time henceforth, in execution of said contract; that the said Dabney, Morgan & Co., George D. Morgan and others, and their financial agents in the State of Georgia, be enjoined from transferring, selling, or otherwise negotiating or using any of said Macon and Brunswick Railroad Company's bonds, endorsed by the Governor of the State of Georgia as aforesaid, which have been transferred to them by said railroad company, under said illegal and fraudulent contract, and which may be still in their hands undisposed of, until the further order or decree of the Court, and for a decree that all of said bonds of said Macon and Brunswick Railroad Company, endorsed by the

State of Georgia, and still in the hands or under the control of the said railroad company, or which may be in the hands of, or under the control of, the said George D. Morgan, Dabney, Morgan & Co., and others, may be cancelled and delivered up to the Governor of said State, and that said contract between the said railroad company and the said George D. Morgan, Dabney, Morgan & Co., and others, with eight per cent. preferred and guaranteed stock of the said Macon and Brunswick Railroad Company, be cancelled, set aside, vacated and annulled, and that said railroad company be perpetually enjoined from entering into any other contract or agreement of like character, whereby the credit of the State of Georgia may be impaired, and the burdens of the citizens and taxpayers thereof correspondingly increased. The injunction issued, and service was perfected on the Macon and Brunswick Railroad Company only. No steps were taken to serve the other parties.

The Macon and Brunswick Railroad Company filed its answer as follows:

This defendant admits that the Macon and Brunswick Railroad Company is a corporation, existing by charter, under and by an Act of the Legislature of Georgia, with its principal office in the city of Macon, and said county of Bibb; that the Act of the 3d day of December, 1866, and the Resolutions of the 4th day of December, 1866, were passed by the General Assembly of the State of Georgia, as set forth in complainants' bill; and that the President and Directors of the Macon and Brunswick Railroad Company did give to the then Governor of said State their acceptance, in writing, of the terms of said Resolutions, and did, in said acceptance, receive said Resolutions as explanation of said Act, and equally binding with said Act upon them.

It is true that the credit of the State given to the Macon and Brunswick Railroad Company by the said Act and the said Resolutions, was extended upon the faith of the facts stated in the preamble to the said Act, whilst at the same time every fact of any interest or importance connected with the Macon and Brunswick Railroad was disclosed to the

Jones *et al.*, *vs.* Macon and Brunswick R. R. Company.

members of the General Assembly, and to the then Governor of the State, before the passage and approval of the said Act and the said Resolutions.

The purpose of the State in extending its aid to the Macon and Brunswick Railroad Company was to enable said company to continue, extend and complete its road. The mode or manner by which this purpose is to be accomplished is a matter within the discretion of its President, Board of Directors and Stockholders, controlled by nothing except its charter; and the use to be made of the credit of the State granted by said Act and Resolutions is also a matter within the discretion of its Board of Directors, President and Stockholders, and this discretion is not controlled by anything except its charter and the said Act and Resolutions.

This defendant has always recognized the said Act and Resolutions, and its acceptance of the same, as constituting an inviolable contract between itself and the State of Georgia, and denies, explicitly and emphatically, that it has ever, directly or indirectly, in any way, violated the true intent and meaning of said contract.

Said Act and Resolutions do not prescribe the mode in which it shall use its bonds, which they authorize the Governor of the State to endorse; do not provide that it shall sell said bonds; do not provide that it shall dispose of them for currency or in payment of its debts, or for labor, or material, or machinery, and do not forbid the sale of said bonds or their hypothecation for loans, or their use in the payment of debts, or for the purchase and payment of machinery, material and labor, or any other use of said bonds, which, in the discretion of its President and Directors, limited only by their charter of incorporation, is necessary and expedient in securing the completion of the Macon and Brunswick Railroad, but provide simply that said Macon and Brunswick Railroad Company shall not "sell or dispose of said bonds for more than ten per cent. discount;" that the endorsement of said bonds by the Governor "shall not exceed one million of dollars, until an amount of capital equal to the additional endorsement shall be *bona fide* subscribed and paid in to said

company ;" and that "it shall be the duty of said company to set apart annually two per cent. of the amount endorsed for, as a sinking fund, which shall be invested in State bonds and deposited with the Governor, and which shall be applied exclusively to the payment of the bonds of the company." These three provisions of said Act and Resolutions are binding upon it, and they are the only limitations upon the issue and endorsement of said bonds under the terms of said Act and said Resolutions, and upon its use of said bonds, which are imposed upon it by said Act and said Resolutions.

This defendant, advised and believing that this construction of its contract with the State of Georgia is the only correct construction of that contract, has uniformly acted upon it, and denies that it has, in a single material point, violated the true intent and meaning of that contract, or done anything whatever under it which would affect the credit of the State of Georgia, or in any way injure the citizens and tax-payers thereof.

The bonds of this defendant, known as First Mortgage Bonds, and secured by a lien on all its property of every kind, which has priority over all others, have been endorsed by the State of Georgia, in pursuance of said Act and Resolutions, to the extent of six hundred thousand dollars, Governor Jenkins having given the State's endorsement to the extent of four hundred and fifty thousand dollars, and Governor Bullock to the extent of one hundred and fifty thousand dollars. This defendant has sold, paid out and exchanged its bonds so endorsed by the State of Georgia to the amount of $409,000; has hypothecated said bonds to the amount of $183,000; and holds said bonds to the amount of $8,000; and it has hereto attached general and detailed statements of its transactions with said bonds, in which it has fully set forth, according to the best of its knowledge, information, and belief, the dates of the endorsement, and delivery of different amounts of said bonds; the disposition of every single one of said bonds; whether sold, paid out, exchanged, hypothecated, or still in the hands of this defendant; if sold, by whom, for what, when, and at what dis-

count; if hypothecated, with whom, and for what purpose; if exchanged, when, with whom, and for what; if paid out, to whom, for what debt, account or property, together with every other particular, in connection with its use of said bonds, which, it conceives, is of any importance either to the interested or to the curious. This defendant admits that, as these statements disclose twenty-one thousand dollars, in amount of said bonds, were sold for a larger discount than ten per cent.; but it insists that they have never been sold. for less than ninety cents in the dollar, except in this single instance; and claims that, in that instance, the sale was made by its agents, Messrs. Wilson, Callaway & Co., of New York, without its knowledge or consent, against its earnest remonstrance, and under circumstances which would authorize it to demand of its said agents, a rescision of said sale, and the return of said bonds to this defendant.

This defendant admits, as disclosed by these statements, that it has used the said bonds, for every purpose and in every way, which its direction deemed advisable, for the completion of its road; that it has used the said bonds for the payment of debts of every kind, existing at the time of the passage of the Act and Resolutions of December, 1866, or contracted since; that it has used the said bonds in retiring its bonds known as its Confederate issue of bonds; that it has sold them for money, and has paid them out for machinery, for material, and to contractors; but it insists that it has made no use of said bonds, which was not legitimate, legal and fully authorized by the said Act, and the said Resolutions. It further insists that it has made no use of said bonds, which has injured the credit of the State, or has served to increase the burthen of its people. It further insists, that the Legislature of Georgia, and the then Governor of the State, were fully advised of the condition of the affairs of this defendant, at the time said Act and said Resolution were passed and approved; and knew that it would make the use of said bonds, which it has in fact made. And, in this connection, this defendant states, that, at that time, whilst the facts set forth in the preamble to said Act, were

represented as therein set forth, it was also represented that the Macon and Brunswick Railroad Company was in debt, and especially was it represented to the members of the General Assembly, that said company owed $330,000 on bonds issued by it during the war, which was secured by a mortgage on its road, and that these bonds would have to be retired, either by the use of bonds endorsed by the State, or in some other way, before the bonds endorsed by the State, under said Act and Resolutions, could have priority of lein, upon the road and other property of said company. With a full knowledge of these facts, the Legislature of Georgia passed said Act and Resolutions, and Governor Jenkins approved them. Governor Jenkins, before he would give the State endorsement to its bonds, under said Act and Resolutions, required that it should retire an amount of its said Confederate bonds, equal to that for which his endorsement was asked, and, under this arrangement, he endorsed $450,000 of its bonds, at different times, and in different amounts, as the said Confederate bonds were retired, and exhibited to him, cancelled. Governor Jenkins was aware that it was using the said endorsed bonds, to retire its said Confederate bonds; and Governor Bullock was and is aware that it has so used said endorsed bonds, and, with this knowledge, has endorsed its bonds under said Act and Resolutions, to the amount of $150,000; making the amount, for which it has received the endorsement of the State, $600,000, although, upon the terms and conditions of said Act and Resolutions, it is now entitled to the endorsement of the State, to the amount of $850,000.

This defendant has not literally complied with the provisions of said Resolutions, requiring it to invest in State bonds, to be deposited with the Governor, two per cent. annually, of the amount of its bonds endorsed by the State; but it has complied fully with the true intent, and meaning of said provision, and accomplished the object which the Legislature had in view, in enacting it; for, whilst it has not made a deposit of State bonds, as required by that provision, it has always been entitled to the State's endorsement

Jones *et al.*, *vs.* Macon and Brunswick R. R. Company.

upon its bonds, to an amount over and above what it has actually received, much larger than said two per cent. At this time, whilst said two per cent. sinking fund amounts to about $8,000 only, it is justly entitled to the State's endorsement upon its bonds to the amount of $250,000 over and above the amount of endorsement asked for and received; and this right to the State's endorsement, to the extent of a quarter of a million of dollars, is ample security for said $8,000. Besides, it is not certain, under said Act and Resolutions, when said deposit should commence; at the close of the first year, from the passage of said Act and Resolutions, there was no civil governor or civil treasurer of the State of Georgia, with whom it could make said deposit; and consequently, it has been doubtful of its duty in the premises. But, anxious to comply, literally, with every provision of said Act and Resolutions, and to give to the State every possible guarantee, against loss or injury by its endorsement of this defendant's bonds, this defendant has made arrangements to purchase State bonds, and make the said deposit, and is ready and willing to do whatever else the Court may require to be done in reference to said sinking fund, so as to save the State harmless, upon its endorsement of the bonds, which have been, or may, hereafter, be made.

In December, 1866, when said Act and Resolutions were passed, the bonds of the State were selling for about 97½ cents in the dollar, and the hope was confidently indulged, that, with her excellent credit, ample means, and increased prosperity, under her full restoration to all her rights, as a member of the Union, her bonds would soon sell at or above par, in the, then as now, depreciated currency of the country; and that the bonds of the Macon and Brunswick Railroad Company, endorsed by the State, would sell for but little, if any, less. Acting upon this belief, said company ordered a large amount of iron and other material for the completion of its road; but, by the time the said iron, amounting to 3,800 tons of rails, was delivered at Brunswick, all Southern securities had fallen so low, consequent upon the political condition and prospects of the South, and especially all Geor-

gia securities, in consequence of the termination of its civil government, by military order, that said company, finding it could not pay for said iron, without selling said bonds for less than ninety cents in the dollar, determined to forfeit the same; although this course involved the payment of heavy damages, solely because said company was determined to keep its faith with the State, inviolate.   Darker and darker grew the political and financial horizon, and lower sunk all Southern securities, until, in February, 1868, the bonds of the State were selling at about sixty-five cents in the dollar, in currency, and the bonds of the Macon and Brunswick Railroad Company, endorsed by the State, were worth from fifty to sixty cents in the dollar, in currency.   In this condition of affairs, the annual meeting of the stockholders of said company, was held in Macon, on the 6th day of February, 1868, to which the position and prospects of said company were fully and frankly disclosed, in a report, submitted by its president, as will be seen by reference to a copy of said report attached hereto.   At this meeting, resolutions were unanimously adopted, authorizing the directors to make any contract, or do anything which, in their discretion, they might deem best, to complete the Macon and Brunswick Railroad, even though it should involve the loss of their entire investment, to the stockholders, amounting, at that time, to about $1,200,000, which would not involve a violation of the provisions of said Act and Resolutions.   Acting upon this authority, the directors of the company, after a long negotiation, entered into a contract for the completion of the road, with Messrs. Hull and Miller, of the city of New York, a copy of which is hereto attached.   This defendant claims and insists that it had a perfect right, under said Act and Resolutions, to make this contract, that, having the legal right to make it, it is responsible to its stockholders only for it, who have, at their last annual meeting, held on the 4th instant, by a unanimous vote, approved and endorsed it.   It claims, further, that this contract is an exceedingly advantageous one to its stockholders, and that it has already enhanced the value of their property, two hundred per cent.; that this

contract is a benefit to the State of Georgia, and to its people, insuring, as it does, the early completion, and active working of another line of railway from the centre of the State, to the sea, developing, as it will, the resources of an important section of the State, and adding, as it already has done, to the capital, the population, and the taxable values of the State; that this contract, instead of jeopardizing the credit of the State, has already added immensely to the security of the State against ultimate loss, upon its endorsement of the bonds of this defendant, by adding immensely to the property of this defendant, which is mortgaged to the State; that this contract is a business arrangement between itself and certain individuals, which is authorized by law, and endorsed by all of its stockholders, and that as it involves no risk, to any one, except its stockholders and its contractors, they are the only parties who have any right to enquire or complain concerning it.

The only authority of law, by virtue of which complainants claim the right to come into Court, and call in question the conduct of this defendant, in connection with its bonds endorsed by the State of Georgia, is the fifth section of the Act of the Legislature of Georgia, approved September 21, 1868, which is set forth in complainant's bill, which Act is unconstitutional and void, in so far as this respondent is concerned, being inconsistent with and repugnant to the fifth paragraph of the fourth section of the third article of the Constitution of this State, and being as to the contract of this company with the State of Georgia, and as to the contract of this company with its contractors, Hull and Miller, of the 25th day of June, 1868, retroactive and void.

This defendant saith that its contract, as embodied in its charter, and in the said Act and Resolutions of the 3d and 4th of December, 1866, is with the State of Georgia, and that the State of Georgia is the only party with this respondent to that contract, and is alone entitled to call in question the action of this company, in connection with its bonds endorsed by the State, under said Act and Resolutions. In the exercise of this right, the State of Georgia, acting through a

joint special committee of the two houses of the General Assembly, has inquired into and thoroughly investigated every question affecting its interest in connection with its endorsement of the bonds of this company, and the result is embodied in a report and resolution, adopted by both houses, and approved by the Governor, on the 28th day of January, 1869, a copy of which, for convenience of reference, is hereto attached. By this action of its Legislature, the State of Georgia has declared that this defendant has fully complied with every requirement of its laws, in reference to its endorsement of the bonds of this defendant, and has approved, ratified, endorsed, confirmed and legalized every act of this defendant in the premises. This action of the Legislature of Georgia has all the force of a confirmatory statute, and amounts to a full acquittance and discharge of this defendant, touching the matters complained of in the said bill; and this defendant claims the same benefit, as if it had pleaded the same in this cause.

None of the exhibits mentioned in the answer are important here, except this one:

" The Joint Special Committee, who were directed to take into consideration the condition of the State's endorsement on the bonds of the Macon and Brunswick Railroad, as the interest of the State may require, beg leave to report that they have proceeded to enquire into the questions submitted to them by the joint resolutions of the two Houses, and have given the subject that investigation which its importance to the State demands. They caused the original books and records of the company to be introduced before them, showing the use of the bonds endorsed by the State, and also the contract made for the completion of the road, with Messrs. Hull & Miller, and their associates; from a full and thorough examination of them, and other evidence adduced, they are entirely satisfied that the Macon and Brunswick Railroad Company, in the use of the endorsed bonds, have fully complied with the requirements of the act, authorizing the endorsement, and carefully guarded the interest of the State; that the contract is most judicious and favorable,

insuring the completion of the road to Brunswick during the present year, and the development of that section of the State to a great degree.    They, therefore, recommend the adoption of the following resolution :

"*Resolved*, That in the opinion of the General Assembly, the Macon and Brunswick Railroad Company have fully complied with the requirements of the Legislature, providing for the State's endorsement of the bonds of said company, and that the Governor is requested to continue the endorsement thereon as provided by said Act.    Approved January 28, 1869."

Upon the coming in of this answer, a motion was made to dissolve said injunction.    Complainants' solicitors objected to the hearing of this motion, because the other defendants had not answered.    The Chancellor ordered the cause to proceed.    After argument had, he dissolved the injunction upon the grounds that the 5th section of the said Act of September 21st, 1868, was, so far as applicable to railroad companies, other than The Air Line Railroad Company, in conflict with the 5th paragraph of the 4th section of the 3rd article of the Constitution of 1868 ; that said Resolution of the Legislature of 1869, rendered it improper to hold up the injunction, because it would be indirectly enjoining the Governor of the State in his official capacity, and that he could not enforce the transfer of the bonds already sold, because the holders of them had not been served with this bill.

The refusal to postpone the hearing till the other defendants should answer, and the dissolution of the injunction, are assigned as error here.

When the cause was called for argument here, counsel for the Macon and Brunswick Railroad Company moved to dismiss the bill of exception on the ground that, under the Code, this Court cannot review the decisions of Chancellors dissolving injunctions at Chambers, and cited Irwin's Code, sec. 237, p. 2 ; secs. 3150, 3151, 3153, 4192 ; Gurney vs. Durham, 11 Ga. R., 9 ; Carter vs. Buchanon, 2 Kelly, 338 ; Evans vs. Adams, 12 Ga. R., 41 ; Oliver vs. Fuller, 13th, 506 ; Jones vs. Crawford, 18th, 281 ; Tarver vs. The State,

25th, 154; Allen, Ball & Co., vs. The Mayor, etc., 9th, 286; 11th, 308, 317, 305; 15th, 554; 12th, 8; 3rd, 117; 1 Comstock's R, 533–4; 9 Peters, 166; 1 Min., 24; 2 Metcalf, 325; 2 Rand., 252; 2 Howard, 61; 6 Howard, 120; 7 Howard, 650; but the Court, (BROWN, C. J., dissenting,) overruled the motion, and the cause was heard.

LYON, DEGRAFFENRIED & IRWIN, DOUGHERTY, for plaintiffs in error said:

1. The Court erred in dissolving the injunction before the coming in of the answer of the other defendants, upon whom the gravamen of the charge of fraud rested equally with the Macon and Brunswick Railroad. Cook vs. Smith, *et al.*, decided at present term.

2. The 5th section of the Act to give aid to the Georgia Air Line Railroad, and for other purposes, approved 21st September, 1868, is not obnoxious to the Constitutional objection—that it causes *this* Act to refer to more than one subject matter.

For the matters embraced in this section, being restrictions and conditions imposed upon the aid therein given, as well as remedies in case of a violation thereof, for the security and protection of the State, applicable to the Georgia Air Line Railroad, their extension to all other railroads to which like aid is or has been given, are of kindred natures and like subject matters, relevant and congruous. Subject matters, to be different in the sense in which this term is used in the Constitution, must be independent, foreign, irrelevant, incongruous, and without connection. Among a great number of adjudications on this subject, plaintiffs refer: Mosier vs. Hilton, 15 Barb., 657; Belleville Railroad Co. vs. Gregory, 15 Illi., 20; Davis vs. The State, 7. Md., 151; Murphy vs. Menard, 11 Texas, 673; Dewitt vs. San Francisco, 2 Cal., 289; People vs. Lawrence, 36 Barb., 177; Chiles vs. Drake, 2 Mct. Ky., 145; Louisville vs. Ballard, 2 Mct. Ky., 165; People vs. Mahany, 13 Mich., 481.

3. The act requested to be done by the Governor by the resolution of the Legislature of the 28th of January, 1869,

was purely *ministerial*, and not executive; and if the injunction had operated upon him *directly*, it would have violated no rule of law, but would have been in furtherance of the policy as well as the letter of the law. The reasons that induce the Courts not to apply any of their extraordinary writs to the Executive Department, are purely political, for their enforcement might deprive one of the department of the government of its head; and as the injunction in this case would not, in any event, produce this result, either directly or indirectly, it should not have been dissolved on this account. Low vs. Towns, Governor, etc., 8 Ga., 360.

4. The resolution of the 28th of January, 1869, is inoperative and void:

First. Because if intended to relieve the Macon and Brunswick Railroad from the conditions and restrictions imposed by the 5th section of the Act of 21st September, 1868, that could only be done by Act of the Legislature, and not by joint report and resolutions. People vs. Campbell, 3 Gilman, 466; Pinckney vs. Hannegan & Jones, 2 Strob. Law Rep., 250; In the matter of the county seat of Lafayette county, 2 Chand., Wis. R., 212.

Second. If a declaration of the sense of the Legislature that the Macon and Brunswick Railroad had not violated any of those conditions and restrictions, as the report and resolution plainly import, it was a judicial, and not legislative act, and in violation of Section 31, Article 1, of the new Constitution. Governor vs. Porter, 5 Hum., 165; Ponder vs. Graham, 4 Fla., 22.

5. As the injunction did not affect those defendants not served, the want of service as to them was no ground of dissolution as to those actually served.

6. The injunction should have been retained, because the answer did not deny the equities of the bill, but admitted a non-compliance with the terms imposed by the acts and resolutions of the Legislature.

7. It admitted a sale of the bonds endorsed by the State, in repeated instances, for less than ninety cents on the dollar.

8. In the arrangement with Hull & Miller, by which all

of the bonds endorsed and to be endorsed were disposed of in advance, it was not pretended that the road received what was equivalent in cash to ninety cents on the dollar for the bonds.

NESBITT & JACKSON, WHITTLE & GUSTIN, W. HOPE HULL, for defendants.

1. The railroad being served, and its answer filed, it had the right, under the statute, to move for the dissolution, irrespective of any other party defendant, especially in a case where the other parties defendants had not been served, and no steps taken to serve them.

2. It was the duty of the plaintiffs in error to cause the other defendants to be served. Not having done so, and having taken no steps to serve them, they can take no advantage of their negligence to our injury.

3. The plaintiffs, upon serving the other defendants, would be entitled to reinstate the injunction as to them, if the case should warrant it. Irwin's Code, Section 3151.

4. The continuance of an injunction is within the discretion of the Circuit Judge, and was in this case wisely exercised, and will not be controlled by this Court. Irwin's Code, Section 3153.

The Act of the Legislature of September, 1868, especially the 5th section of that Act, so far as that Act authorizes this proceeding against the Macon and Brunswick Railroad is void, because it is in direct violation of Section 4, Article III, of the Constitution of Georgia. As to the old Constitution of Georgia, see Cobb's Digest, page 1114; as to present Constitution of Georgia, see Constitution of 1868; as to Constitution of 1865, see Irwin's Code, page 973. For all the decisions of the Supreme Court of Georgia upon this matter, see 6 Ga. R., 27; 4 Ga. R., 26; 12 Ga. R., 36; 19 Ga. R., 337; 21 Ga. R., 592; 22 Ga. R., 203; 23 Ga. R., 9; 26 Ga. R., 120.

By the Constitution of Georgia, all acts in violation of that Constitution, are void, and it is made the duty of the Courts so to declare them. Article 1, Section 32.

Jones *et al.*, *vs.* Macon and Brunswick R. R. Company.

The Act of 1868 is void also, because it violates that provision of the Federal Constitution which prohibits the State from passing laws which impair the obligation of contracts. The 5th section of that Act impairs the obligation of the contract between the State and the Macon and Brunswick Railroad. As to decisions which relate to the impairing of the obligation of a contract generally, see 10 Ga. R., 196; 6 Ga. R., 439; Story on the Constitution, 3 vol., pp. 280, 281, Section 1379; 4 Wheat, 197-8; 12 Wheat, 284, 324-5, 338-9 340, 854; 3 Wash. C. C. R., 319; 8 Wheat, 1; 5 Peters, 457; 4 Wallace, ——; 2 Kelly, 146; 3 Kelly, 38; 5 Ga. R., 239; Ibid, 447; C. Ga. 130 : 9 Ga. R., 253; 7 Ga. R. 263; 9 Ga. R., 517; 10 Ga. R., 190; 13 Ga. R., 306; 17 Ga. R., 56; Ibid, 179; 20 Ga. R., 443; 23 Ga. R., 51; Aycock vs. Martin, 37 Ga. R.

A contract between the State and a citizen, (a corporation occupies the position of a citizen,) is as fully protected by this provision as one between indviduals. 10 Ga. R., 190.

If it be claimed that the Act of 1868 relates to *remedies*, and, therefore, is not within the prohibition of the Constitution, retrospective laws, although acting alone upon remedies, are void, if, in the least degree, they impair the obligation of a contract : See Wilder vs. Lumpkin, 4 Ga. R., 208 to 220.

The Act of 1868 impairs the contract with the State, by adding parties thereto not contemplated in it; by giving to the State a right of action, through tax-payers, not contemplated in the contract, and by divesting us of the right, secured by the contract, of defending against the State alone. The decisions of the Supreme Court of Georgia upon this point are : 4 Ga. R., 208; 9 Ga. R., 203; 12 Ga. R., 437 ; 16 Ga. R., 102; Ibid, 151; 17 Ga. R., 568; 23 Ga. R., 183; 28 Ga. R., 345; Ibid, 597; 30 Ga. R., 845; 35 Ga. R., 73. See further on this head : 2 Shorter, 16; 2 Mad., 310; 4 Burrowes, 2460; Story on Constitution, vol. 3, pp. 250, 251; 1 Kent, 454, 455; 10 Serg. & Rawls, 101; 16 Ibid, 35; 7 Watts, 300; 16 Mass., 245; 9 Mass., 360; 18 Maine, 109; 4 Wheat, 200, 207; 12 Wheat, 378; 3 Peters, 280.

If the plaintiffs in error are held as suing in their *own right*, the views above are conclusive.

If the plaintiffs are suing as agents of the State, then, by the joint resolutions of the Legislature of January, 1869, the case brought by them and the injunction were disaffirmed and dismissed, and being exhibited in the answer, the presiding Judge was instructed to dissolve the injunction. See resolutions in the answer.

1. The power of these plaintiffs to sue as agents, is a power not coupled with an interest; the law of 1868 and the bill itself demonstrates this to be true. In the bill they claim no personal interest, and ask no decree in their favor. The law gives them no interest as informers or otherwise.

2. If agents of the State only, then the law of principal and agent applies to them ; and by that law, the agency was revocable by the State at will, and the principal, (the State,) may " affirm or disaffirm the acts of its agents, as its interests may dictate :" Irwin's Code, secs. 2157, 2158; Story on Agency, 495 *et seq.;* 8 Wheat, 174; Chitty on Contracts, 213, 214 ; 6 Conn. R., 557 ; 9 Cowen's R., 34.

3. The resolutions of 1869 have the force of law, and the Courts are bound to respect them : Irwin's Code, secs. 37, 62; par. 6, sec. 4, art. III, Constitution of 1868 ; also, sec. 9, art. III ; also, sec. 1, art. III ; sec. 5, art. III ; sec. 7, art. IV ; sec. 4, art. XI. The law had laid its hand upon this injunction when it was dissolved, and the presiding Judge had no alternative but to dissolve it.

4. Had he held up the injunction, he would thereby have enjoined a co-ordinate department of the government. This he had no power to do, because the several departments of the government are supreme in their respective spheres.

5. The law having disposed of the case, and that law being set up in the sworn answer, the equity of the bill *was sworn off*, and that being so, the injunction could not be held up. Equity follows the law.

6. In *qui tam* actions, where, by law, a part or the whole of a forfeiture or a penalty is given to an informer, the Legislature may repeal the law at any time (even after suit has

Jones *et al., vs.* Macon and Brunswick R. R. Company.

been instituted by an informer) before the judgment is rendered in his favor : See the Bank of St. Mary's vs the State of Georgia, decided in 1853, 12 Ga. R., 475. See also 35 Ga. R., 273 ; 2 Wendell's Blackstone, 436–7–8 ; 1 William Blackstone's R., 451 ; N. Hamp. R., 61 ; 6 Sheply R., 109 ; 6 Wend. R., 526 ; 11 Pick., 350 ; 17 Mass., 240 ; 4 Alab., 487 ; 5 Cranch, 281; 6 Cranch, 329 ; 3 Peters, 57 ; 13 How., 431, Smith's Stat. Const., 131, 137, 500, 505 ; 7 Penn. R., 329 ; 26 Wend., 192; 8 Paige, 527 ; 5 Wallace R., —— ; 1 vol. American Law Review, title Statutory Constitution ; 2 Knott & McCord, 448 ; 12 Wheat, 206.

BROWN, C. J.

The allegations in this bill, upon the only ground authorizing the complainants to maintain it under the Act of the Legislature, are made, and the facts charged, " on information received from others," without stating who are the informants, and without any affidavit from such other persons to sustain the allegations.    An injunction, which is a harsh remedy, should never be granted till a clear *prima facie* case is made by the bill, by positive averrments.    A charge that the facts are true, on information received from others, is insufficient.

2.  The 5th section of the " Act to loan the credit of the State to the Georgia Air-line Railroad Company, and for other purposes," provides that no railroad company in this State, shall, under any pretext, sell or dispose of any bonds issued to it by the State, or any of its own bonds endorsed by the State, at less than ninety cents in the dollar, in lawful money of the United States.    And, in case any such company, to which the State has or may extend its aid, has or may, by any direct contract, or by any evasion or pretext, sell or dispose of, or attempt to sell or dispose of, any bonds issued or endorsed by the State as aforesaid, for less than ninety cents in the dollar, it shall be the duty of his Excellency, the Governor, to withhold all further issues of bonds to such company, and all further endorsements of the bonds of such company.    And any citizen or tax-payer in this

State, may appeal to the Courts in his own name, to restrain such illegal use of the bonds so issued, or endorsed to said company; and to discover the fraudulent or illegal use made of such bonds by reason of which the credit of the State may be depreciated, and the burdens of the citizens increased.

This bill was filed under the foregoing section. And it is urged by the counsel for the defendant in error, and was so ruled in the Court below, that said section, as applied to any railroad company in this State, other than the Air-line Company, is unconstitutional and void, under the 5th paragraph of the 4th section of the 3rd article of the Constitution of this State, which says: " Nor shall any law or ordinance pass which refers to more than one subject matter, or contains matter different from what is expressed in the title thereof." It is contended that it was one subject matter to grant the aid of the State to the Air-line Railroad Company, and another and a different subject matter to authorize a citizen or tax-payer to file a bill to enjoin the Macon and Brunswick Railroad Company from receiving the endorsement of the State on its bonds, because it has sold such bonds at less han ninety cents in the dollar.

In the view that we take of this case, we find it unnecessary to pronounce any judgment upon this point. The provision in the Air-line Act seems to us to be a proper one, as applied to that company, and one that might wisely be engrafted by the Legislature on every bill passed for a like purpose, when the State agrees to endorse the bonds of a railroad company, as a mere gratuity or loan. Should the State endorse or issue bonds in payment of a debt, or in liquidation of any just demand against her, she could, with propriety, impose no such restriction upon their negotiability, but when she makes a naked loan of her credit, it is not only proper but prudent to do so.

3. We are unanimously agreed that the 5th section of the Act aforesaid, if constitutional, confers upon a citizen or tax-payer no such powers as are attempted to be exercised by this bill. What are the rights or powers delegated to the citizen or tax-payer by this section, which are to be exercised by

Jones *et al.*, *vs.* Macon and Brunswick R. R. Company.

him, for the public good? Simply to appeal to the Courts in his own name, to restrain the use, by the company, of the bonds endorsed by the State at a greater discount than ninety cents in the dollar, and to discover any such fraudulent or illegal use made of the endorsed bonds, by which the credit of the State may be depreciated, and the burdens of the citizen increased. This is the whole scope and full extent of the power which this Act delegates to the citizen or tax-payer—not for his individual benefit exclusively, but for the benefit of the public. And to this single issue it is the duty of the Court to confine him in every case of this character which may be brought by the citizen or tax-payer under this section.

When the State makes gratuitous loans of her credit to a company, she should see to it that the bonds having her endorsement, are not sold at such discount in the market as will impair her credit or increase the burdens of her people by its depreciation. And to this end she acts wisely to make every citizen and tax-payer in the State her agent, to watch the sales of said bonds, and, in case they are sold at a greater discount than the law allows, to appeal to the Courts to restrain the further illegal use of the bonds, and to discover the fraudulent acts of the company in negotiating the bonds at a greater discount than the law allows. But this is the full extent of the power delegated, and the full extent to which it can be wisely delegated, and here its exercise must stop. It never was the intention of this Act to allow every citizen or tax-payer, who may feel inclined to intermeddle in other people's business, to involve every railroad company in this State, which receives the aid of the State, in interminable litigation, by filing bills to inquire into all the acts of such companies, and to investigate matters which do not properly belong to the Courts, but to the Executive and Legislative departments of the government. What right have the Courts to inquire into the conduct and motives of the Legislature in passing bills of this character, or, indeed, of any other character, or of the Executive in executing them, or in issuing bonds in conformity to them? No more than

either of the other departments has to assume the functions of the Courts. Each is a separate body of magistracy, and neither has a right to encroach upon the legitimate functions of the other.

The Act under consideration has delegated no power to the citizen or tax-payer to file a bill to inquire whether the company has paid in the sinking fund, or whether the necessary subscriptions to the stock have been made, or whether the company is running its road upon the line intended by the charter, and the like. It is a question of public policy whether the State will endorse the bonds of any company, and upon what terms she will endorse, and to what extent. And it belongs to the law-making power to regulate all this, and to the Executive department to see that the restrictions imposed, whatever they may be, are complied with before the bonds are issued. But the law-making power may change or modify the restrictions or terms imposed upon the companies receiving the aid of the State as a guaranty, from time to time, as, in their judgment, the interest of the State requires, and neither the Courts nor any individual citizen has any right to interfere in any matter properly pertaining to the Legislative or Executive department. If larger powers on this subject should, in future, be delegated to the private citizen, or to the Courts, it will then be time enough to exercise them. Till then, the Courts will not sanction any such interference.

The State has granted her aid by a loan of her credit to those great enterprises in consideration of the great importance to the people of their early completion, to open new channels of commerce, afford new facilities and conveniences to her population, develop her vast resources, and increase immensely the value of her taxable property. And the Courts should not, by assuming powers which belong to the other departments of the government, thwart this wise public policy, or sanction and encourage the captious objections of fault-finders, or the intermeddling of interested parties, who, to uphold the power and control of monopolies, seek to crush out all new lines of communication, which, as rivals, by

Jones *et al.*, *vs.* Macon and Brunswick R. R. Company.

affording better facilities to the people, may divide the business, and reduce the large profits of such companies as may heretofore have made the interests of whole sections of the State subservient to their own.

4. We think it was the duty of the Chancellor, even if a good cause for filing this bill had originally existed, to dissolve this injunction. This is purely a question of public policy, and not of individual right. This bill was not filed by these tax-payers to protect private right, but to enforce public policy by preventing public wrong. No decree could have been rendered in their favor as individuals. They were the agents of the State, acting at their own expense for the public, under the authority delegated by the Legislature. And if they had not transcended their authority, it was the right of the Legislature, at any time, to put a period to the action by the passage of a resolution or act directing it to be dismissed, or ratifying the use made of the bonds of the company, and directing that others be issued to carry forward the construction of the road to completion as rapidly as possible. This is what is, in effect, done by the resolution passed by the General Assembly on the 28th day of July, 1869. When that resolution passed it put an end to this action.

Judgment affirmed.